May it please the Court, Victor Nieblas, Board Petitioner, Jose Alberto Valeriano. Good morning. Your Honor, this case involves ineffective assistance of counsel. Counsel? Yes. This is a really troubling case. The equities are so good for your client, it would be really nice to give him a break. I don't see how. Tell me what peg there is to hang our hat on. Well, Your Honor, I think this is what the case is all about. We filed a motion to reopen based on the equitable tolling doctrine. The Board dismissed the case solely based on their reasoning that my client was not diligent in filing the motion. And this is where this case focuses on, because he was diligent. When he hired Finally, even if the equitable tolling is taken into account? Your Honor, I believe so, because he found out that he was defrauded, that he was victimized by his previous attorney who did not file an appeal timely. Now, as per the requirements in Lozada, the former attorney wrote letters to the attorneys to give them an opportunity to respond. Your Honor, let's grant you that, but didn't he have a new lawyer that he met with eight months before he filed? Yes, he did, Your Honor. And this attorney acted diligently. Again, as I was stating, he was. Well, what just to focus it more directly, what justifies waiting for the government to respond or not to respond in connection with a motion to have something filed jointly? Is it experience that you have a much better shot at a grant if the government joins in it, or what's the story on that? Well, Your Honor, the right to file a motion jointly is provided by the regulations. It's a right given by the regulations, and he followed that. But he waited a long time.  Repeatedly he called to say, what's the status of my request? And he got no response until six months later. Why wouldn't you just file it? Because you know you're already behind the eight ball as far as the deadline goes. And after you filed it, just keep nagging the government lawyer on the phone. How about joining so I can file an amended motion jointly? Well, Your Honor, the regulation says the motion must be filed jointly. Now, we have to admit that equitable tolling arguments are very difficult to win, especially with the Board of Immigration Appeals. In my experience, they've denied all my requests for equitable tolling. So obviously he was faced with a difficult decision, and he chose to at least proceed with what the regulations provided. Well, that comes to my question. That is, is it the experience that it's almost a slam dunk or much easier if it's jointly done but extraordinarily difficult if it's not done jointly? Is that what you're telling us? Yes, Your Honor. The regulations provide that if the government agrees and files a motion jointly, then the number limitations and the time limitations for motions to reopen are overcome. So definitely it becomes extremely more easy to get a stipulation or a joint motion from the government. And that's what my client sought. He was simply just following what the regulations indicated. What's the regulation that says it goes with a joint? Your Honor, that is ATFR 1003.2C3, three I's, three small I's. And again, it says it must be agreed upon by all parties and jointly filed. It doesn't mean separately filed. It doesn't mean filed and then hopefully the government will file and join later. It says filed jointly. And that's exactly what he was waiting for. Make your diligence showing by first just filing it, and that way you stop the clock from running on your time. And then filing a subsequent motion jointly when you can finally get the INS lawyer to answer your calls or agree or whatever the problem is there. Your Honor, because the regulation, we would be violating the regulation. The regulation, again, it says agreed upon by all parties and jointly filed. Well, let me ask the thing as a practical matter in that respect. If you were to file what amounts to a protective one, which is what the judge is suggesting, are you telling us that there's a risk that it would be rejected before you could get the joint consent? In my experience, from what I've heard from the Board of Immigration Appeals on equitable tolling arguments, you would probably get denied quicker than waiting for the government to respond to join. And in this case, again, he tried, if the government. You mean you'd file without the government and while you're still trying to get somebody to take your calls. You'd get turned down. Get turned down. You would get turned down. Now, the government says that we shouldn't have waited, that we should have filed. Now, if the government wants to create a new standard for this regulation, we welcome it because we have no guidance. We have to follow what the regulation says. And again, the regulation says agreed by all parties and filed jointly. Again, there is no in between. There is no exception. There is no standard. Your argument essentially is that the government doesn't have to agree, in which case you would not be able to file jointly. Is that right? Exactly. Okay, so if the clock starts running and while you're trying to get the joint agreement and you don't know one way or the other whether the government is going to do it, this option essentially becomes illusory. You're saying if you have to file, go ahead and file a protective motion to reopen solo, it will get denied before you ever get a chance. Now, let's suppose you did file solo and it got denied. Would this proviso still allow you to get around that denial because it would waive the timeliness and number of motions? Well, Your Honor, theoretically it could because it waives all timeliness. So why isn't that the remedy then? Why don't you file and in the meanwhile pursue a joint motion? Well, Your Honor, because we have to follow what the regulation says. Well, this doesn't say you have to. It says you'll avoid it. But you can still move the board, can't you, for a motion to reopen without the ---- You can certainly try at any time to file with the board, Your Honor. But what I'm saying here is that the previous counsel read the regulation, says file jointly. He tried to do that. Unfortunately, if the government would have said in a week we don't agree, we're not going to join in the motion, then the doors are open for him to file directly with the board. And then we wouldn't be here talking about due diligence, whether or not he was diligent enough. But the government in this case kept the case for six months before they filed a one-page letter saying we don't agree. The motion to reopen was filed 10 days after that denial. So, again, the counsel was acting diligent. But for the government's basically holding on the request for six months, obviously, as Your Honor pointed out, even after the BIA denied the motion, you can seek a stipulation. But the concern is that now you have more things to overcome, more obstacles to overcome. Now you have a third or fourth motion to reopen that's on the table. And, again, it becomes extremely difficult now to get a joint stipulation from the government. I'm not just skipping the whole joint thing. He gets a new lawyer, files a motion to reopen, argues equitable tolling because my first lawyer rendered ineffective assistance, follows the Lozada procedure, and then just gets the thing reopened on ineffective assistance and gets a look at the merits. Your Honor, certainly that is an option that he could have taken. But, again, reviewing the history of the Board of Immigration Appeals and their really not favoring equitable tolling arguments, knowing that he was faced against the wall here, against a rock and a hard place, and having a regulation here. That's a Ninth Circuit authority that can bail you out. Here, I don't think you've got a case. Yes, I understand that. But, again, the Board doesn't look at those cases favorably. And it's very difficult to try to win a case on equitable tolling. Usually it's not until we get to the Ninth Circuit that the equitable tolling is actually considered. Do you have a case that we could use, some kind of authority? Well, Your Honor, I was a counsel on Rodriguez-Lariz's case, which dealt directly with equitable tolling. Mr. Long, Judge Tachima wrote the claim. Yes, Your Honor. And in that case, we requested kindly from the Board to review our equitable tolling argument, and it was flatly denied. And as the decision states, the factors were clear in Rodriguez-Lariz that fraud and ineffective assistance of counsel were present. The case was that you pronounced it properly, and so I had trouble. It's Rodriguez-Lariz. And I cited in my briefs, Your Honor. It's 282 Federal 3rd. And so in this case, Your Honor, again, our contention is that our client was diligent in all aspects, but for the six months that the government maintained and withheld the request. Obviously, in this case, ineffective assistance of counsel does exist. The previous attorney filed an untimely notice to appeal, and the Board dismissed because it was untimely. So my client in this case was basically prohibited from having an appellate process. In this case, by the way, he's gone through all the steps with respect to that first counsel to meet Lozada, hasn't he? Yes, Your Honor. And that's diligent in that. Your Honor, that's very important in this case because the counsel was very effective in following all the steps in Lozada. And he started off by writing a letter to the attorney. No, we have the briefs. As requested by Reyes v. Ashcroft. What's important in this case is that due diligence, there is no one time limit that can be set. You need 30 days or 90 days to meet the due diligence requirement. We must look at it from case to case. And in this case, certainly the six months that the government maintained the request is why we're here. That's the only reason why the Board denied this case or denied the request, because of the due diligence requirement. Your Honor, I have a question. Does Rodriguez-Lariz take care of the due diligence aspect, the eight months? Your Honor, in Rodriguez-Lariz, we filed the motion to reopen, I believe it was within 30 or 60 days after the discovery. In that case, we didn't get a response from the attorney. In this case, we do get responses from the attorney, and there's several letters that interchange between attorneys. So the attorney had to investigate the claims before he would file the Lozada. He did not want to abuse the Lozada process. And I believe my time's up. Thank you, Counsel. Good morning. May it please the Court? My name is Cindy Ferrier, and I'll be representing the Attorney General in this matter. I think the Court's focus actually needs to look to the equitable tolling principles, which is equitable tolling provides that the deadline is tolled until the fraud or misrepresentation is recognized. Then the statute of limitations starts again, and the alien has 90 days to file the motion to reopen. I don't have much problem with granting him equitable tolling while he's got the bad lawyer. So if we start from the date that he has retained counsel, August 21st, and he admits that he knows that the fraud occurred, then he has 90 days from that date to file the motion to reopen with the board. What about counsel's argument, though, that says, look, I have a very long shot, if at all, if I do this on my own, but if I get consent by the government, I have an easy path? What's wrong with pursuing that path? And related to that, why does the government take so long to respond? There's nothing wrong with pursuing the path that he chose to do. However, DHS did decline to join in that motion. Six months later. Right, but they didn't agree to the joint motion. So it was an alternative, but it didn't work for him. Well, wait a minute, that's begging the question. Judge Shader asked you, why is it taking so long? Of course they ultimately denied it. But in the meanwhile, he's waiting to see whether or not that will happen, because that will moot the timeliness and number of motions argument. So the government is sort of sitting on its hands, right? Correct. Where's the due diligence, in other words, on the part of the government? The decision to join in a motion to reopen is solely within the discretionary. It's discretionary. Of course it is. But the guy is sitting there waiting for an answer, yes or no. Right. Exercise your discretion. Well, I can't tell you exactly why it takes them so long. Well, I can, because they're so busy, right? They're so busy that they are finally getting around to it. In the meanwhile, then they turn around and say, too bad. You've got to go by your statute of limitations. But we're busy, so we can't give you the prompt response. That's why Petitioner has the option, then, to file the motion to reopen based upon the legal polling. Now, just be candid with us. If that happened, and I understand that's why I asked the question. And I'm not belittling the fact that you guys are busy. We know you're busy. We're seeing the end product of it here. But there are, as Judge Kleinfeld said, a lot of equities in this case. So try to understand what the process allows under these circumstances, how you look at it. If he had filed a protective motion, gone ahead and thrown himself on the mercy of the BIA's discretion to reopen, not as a joint filing, and at the same parallel to his request for a joint motion, and the BIA denies it, what are the chances, A, that once the BIA has denied it, there's going to be any incentive on the part of DHS to agree to a joint motion, and, B, even if it does, what is the impact likely to be on the BIA of this now yet another motion? Well, I'm not certain whether DHS, whether they would agree. If the Board does deny in the meantime, I'm not sure if they would have any incentive. But if they did agree, the regulation provides that the time and the numeric bars are lifted or they're not put in place. So essentially, if they agreed to the joint motion to reopen at that time, even if the Board had already ruled on what we're calling the protective motion to reopen, then the case would still be reopened before the Board. But as busy as they are, what would be the incentive for them to take that kind of fresh look that you're suggesting they might take? Well, I mean, I do believe they look at the factors before them, and if they determine that, in fact, within their discretion that it was something they didn't want reopening, I have seen them do that. Counsel, I'm trying to understand how this could happen, and you can probably point me to things in the record that I have overlooked or didn't understand. I'm thinking back to private practice. One possibility is you call the government lawyer, and he just never takes your call. Another possibility is you call him, and he or she talks to you and says yes or no. Another possibility is you call, and the government lawyer says, I've got to ask my boss, I don't have authority. And then you call again in three or four days when they haven't called you back, and they say yes or no. Another possibility is you write a letter, you forget about it. They get the letter, and they forget about it because there's no penalty and no time limit for them. Is there any way we can tell what happened? In the record, the only representations that are made are by the former counsel, I believe, on the motion to reopen or reconsider, the second motion to reconsider, where he says that he repeatedly called DHS, but it doesn't indicate what the responses were that he received. Repeatedly called strikes me as good for the petitioner. I mean, that's the best you can do is repeatedly call. Right. Well, again, I think I'd like to get back to the point, though, which is that the tolling period, in no case before the Ninth Circuit, have they found that at the point that the fraud was found out, the statute of limitation began. And there's nothing that sort of restarts or tolls that period. Your problem is, since you didn't settle this case, this could be the first. This is how you get bad law, when you've got great equities and it's tough to deal with the law. Even going to the case that petitioner cited. This is how institutions get bad law. Follow up on my last question. Is there anything in the record that would show why, despite his having repeatedly called, there was no answer? I believe that it would be because they are so busy. But, again, there's nothing in the record which indicates why they did not respond prior to the time that they did. You know, this is a process that is all run by the government. This isn't the third branch at all. So my question is, we hear from counsel for petitioner, who is obviously experienced in this process, as are you. And it just makes me wonder, along the lines of Judge Kleinfeld was averting to, why don't you institutionally address some of these issues? Why don't your guidelines say, look, counsel, if you are moving under this, you're not going to get, you're looking for a joint motion. If you don't get a response in five days, assume, presume you're not going to get it, file your motion. Okay? Some notice, because, you know, in the federal system, you don't go into district court to get some kind of relief without first, under the local rules, at least in the central district, having to ask counsel for the other party to stipulate so that the court doesn't have to be burdened with it. So why can't that kind of process be engaged in? I believe that there are many issues that need to be addressed by the agency and by the government, and I think we're working to try to get to those, but they haven't done that. Well, I appreciate that, and I understand you are. Taking your phone calls would be a start. But there is nothing, in this case, there was Ninth Circuit law at the time that he filed the motion to reopen, which provided that equitable tolling was available to him. The Lopez case, the Verrea case, were both out there. That was a mechanism that was available to him that he knew about. The regulation allowing for the motion to reopen, filed jointly, is not a requirement. It is an option. It is something that if CHS doesn't agree to reopen. I know it's enjoyable to argue before the Court of Appeals, but, you know, the idea of saying, well, we had that remedy available at the end of the line with no certain result, is hardly a justification for a government nonresponse, is it? This isn't. Well, from my point of view, this case is not about the government's nonresponse. It's about his not filing the motion to reopen within the 90 days. Even though he had, as you say, even though he had an option. He had it. He had it as an option. Which is illusory. Which becomes illusory. And we're certainly not saying that he couldn't take that chance. Well, he did. He tried. He tried. At the same time that he protected his right. Where does it say that in the regulations or your guidelines? Regulations don't require that. But certainly your case law does. And even the case that he cites, too, Rodriguez-Larez, in that case, they did file a motion to reopen within a month from finding out the fraud that was present in the case. Certainly there is certainly an option for him that was made clear within the court's case law. So the word of mouth around the system has to be, you have the option, but don't count on it because you'll really, as a practical matter, never get an answer from the government in time for it to be meaningful. So you better just go ahead and take your shot with the motion under the regular due diligence. It seems to me that that was there as an option for him. Okay. That would be nice. Wow. Thank you. Do you get to participate in any of these things going on back in Washington where you talk about things that might be done to improve the system? Only when the court requires it. You know, we used to be in practice, I never represented, I never was employed as a government lawyer, but when you represent institutions like insurance companies and you've got a case with great equities or great equities for the plaintiff and great law for the defendant, you settle it. The law won't be changed. Your Honor, I just want to make three quick points. First, the government's position that we should file the motion prior to waiting for a response from the government really makes the regulation meaningless and it circumvents what? I think I used the word loser, right? Loser, yes. It really does. If, as the government contends, we should not wait, then, as I indicated before, we would welcome a standard. We would welcome some guidance, some instruction as to what we should do when the government is not responding and not returning phone calls. And finally, Your Honor, if the concern is that the tolling starts when the applicant finds out of the ineffectiveness fraud, then maybe the due diligence should be told when the government does not respond. Basically, when the government holds you at bay, when you're waiting for an answer to your question. That's essentially what you're relying on for this purpose, right? Yes, Your Honor. Yes. And? Could you direct me to the page of the excerpts where it says exactly what happened, called repeatedly or whatever? Yes, Your Honor. There are two sets of the administrative record, Your Honor, and they're off by a couple of pages each. I'm looking at the AR for the agency here. Okay. Is that the October 2nd, 2003 or September 15th, 2004 record? Because if I give you a date, it might – And AR page numbers. AR 10. AR 10. Down at the bottom of the last paragraph. Thanks. Page 15, Your Honor. Thank you. Thank you. Thank you. Valeriano v. Vitales is submitted.
judges: Kleinfeld, Fisher, Shadur